The plaintiff brought this action to recover one Dodge automobile which he alleged was his property and wrongfully detained by the defendant. The defendant denied the ownership of the plaintiff and alleged that his possession of the automobile was lawful by reason of the fact that he had loaned to a partnership, composed of T. E. Holding and H. S. Satterwhite, $300.00, for which Satterwhite, the partner and business manager, had executed and delivered to the defendant a promissory *Page 474 
note, and had executed a chattel mortgage on the Dodge coupe in question, and delivered the automobile into the possession of the defendant, authorizing and instructing him to retain possession thereof, which possession was continued until the time it was seized by the plaintiff in this action under claim and delivery proceedings.
The defendant further set up as a counterclaim the said debt and interest thereon, which he alleged the plaintiff had repeatedly acknowledged and promised to pay.
The plaintiff replied to the answer, denying that there was any partnership between himself and Satterwhite and admitting only that Satterwhite was the business manager, with authority to buy, trade, and sell automobiles, and to pay for automobiles out of proceeds of sale and capital furnished by the plaintiff, and denying that Satterwhite had any other authority, and specifically averring that he had no authority to execute notes or chattel mortgages, or to pledge or mortgage the property of the plaintiff.
The defendant filed an amended answer, in which he admitted that Satterwhite was only the agent and general manager in charge of the automobile business owned and operated by the plaintiff, but reaffirming the statement that as such manager he had borrowed the money, executed the promissory note — evidence of the loan — and executed and delivered a chattel mortgage on the automobile sought to be recovered by the plaintiff; further alleging that the money was, in fact, used in the business of the plaintiff and that plaintiff had ratified the actions of the defendant.
Holding testified that the automobile was his, and that after he had obtained title and possession to it, it was driven out on the road by Mr. Satterwhite and left there, and Mr. Daniel "pulled it in to his house," thus acquiring possession of it. He further testified that Satterwhite was only manager of his business, without authority to sign any notes and papers, and more specifically without any authority to manage any of his property or sign a mortgage therefor.
The evidence tends to show further that Satterwhite had drawn a check for $650.00 to pay the balance due the Sales Company on a car, which check was returned unpaid by the bank; that he secured time from the local bank to get up money to take up the check, which he borrowed from the defendant Daniel and another person, executing to Daniel the chattel mortgage on the car referred to. Later, Satterwhite drove the car out on the road and disappeared.
Satterwhite testified: "It was in December when I wrote this $650.00 check, and the business went on until January 4, 1938, about two weeks later. On January 4, 1938, I left Wake Forest, and went to Richmond. I left on a Dodge coupe, the one which is the subject of this action. I *Page 475 
drove it out in the country about 3 1/2 miles on the highway, and I left the car on the side of the highway going out to Bunn from Wake Forest. I locked it and took the switch key with me; I did not lock the door."
"I got out of the car and walked two or three hundred yards; I didn't know where I had started — I just got out of the car and walked down the road, woods on either side, and I didn't know where I was going nor where I had started, and I didn't have any arrangements for anyone to pick me up, nor any arrangements for anyone to pull the car in."
The witness further stated that he had written to Nash-Steele that he had lost so much money for Mr. Holding that he didn't have the nerve to go to him; that he didn't try to find Mr. Holding to ask him if he might sign the mortgages and notes. He stated, however: "The conditional sales agreements that went through the credit company were signed by Mr. Holding — he signed all of them. They are the same as mortgages. When we went into business he told me to sign all of the titles and said, `I want to sign the papers going to the credit company.'"
The plaintiff denied that he had ever ratified the transactions had between Satterwhite and Daniel, the defendant, or had ever promised to pay him anything on his claim.
At the close of plaintiff's evidence, and again at the close of all the evidence, the plaintiff moved for judgment of nonsuit as to defendant's cross action, and in each instance the motion was overruled, and plaintiff excepted.
Upon issues submitted to the jury, they found that Satterwhite was authorized to execute and deliver the chattel mortgage upon the car, as contended by the defendant; that the plaintiff was not the owner and entitled to the possession of the car, and that the value of the automobile was $500.00. No issue was tendered or submitted covering defendant's cross action. Judgment followed, reciting the issues and answer, and in the judgment the court undertook to take cognizance of defendant's counterclaim as follows: "NOW, THEREFORE, it is hereupon ORDERED, ADJUDGED AND DECREED that the plaintiff recover nothing in this action, and that the defendanthave and recover on his cross action herein, of the plaintiff and hissurety on the claim and delivery of bond herein, the sum of $300.00, withinterest thereon at the rate of six per cent per annum from the 23d day ofDecember, 1937, until paid."
The judgment further provides that if the $300.00 and interest is not paid in full in "fifteen days from and after the 20th day of May, 1939," the automobile, the subject of the action, shall be sold as provided in the chattel mortgage.
Plaintiff appealed, assigning errors. *Page 476 
This case presents many anomalies due to the method of trial. The defendant seems to have gotten his counterclaim allowed without the intervention of a jury. The general objection and exception to the judgment does not put us in a position to render the plaintiff any aid in this respect since, standing alone, it does not justify a review of the trial, and we find no exception in the record pertinent to that phase of the case. We do not regard the exceptions to the evidence nor to the motion of judgment as of nonsuit meritorious.
We find
No error.